**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION**

IN RE:

| | |
|---|---|
| **TIMOTHY KYLE ELLIS AND** | **CASE NO. 20-03833-5-JNC** |
| **MELODY ROXANN ELLIS,** | **CHAPTER 11** |

**DEBTORS.**

---

## MOTION TO REOPEN CHAPTER 11 BANKRUPTCY CASE

---

**NOW COME** the Debtors TIMOTHY KYLE ELLIS and MELODY ROXANN ELLIS (collectively, "Debtors"), by and through their undersigned counsel of record, and pursuant to §§ 105(a) and 350(b) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 5010,[1] hereby move this Court for an Order reopening the above-captioned chapter 11 case for the limited purpose of enforcing the Order Confirming First Amended Plan of Reorganization [D.E. 264], which confirmed the First Amended Plan of Reorganization [D.E. 241], as amended and modified, and applicable provisions of the Bankruptcy Code and North Carolina law, which granted them substantive rights, and rectifying the willful and systematic actions taken by certain creditors in violation thereof.  In support hereof, the Debtors shows unto the Court as follows:

      1.      This Court has jurisdiction over the relief sought by the Debtors herein, pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2); see In re Kiker, 98 B.R. 103, 103-04 (Bankr. N.D. Ga. 1988) (holding that

---

[1] All statutory and rule references, unless otherwise indicated herein, are to the Bankruptcy Code, 11 U.S.C. § 101 et seq. and the Federal Rules of Bankruptcy Procedure, respectively.

a debtor's motion to reopen a bankruptcy case to enforce the discharge injunction provided by, *inter alia*, § 524 of the Bankruptcy Code, is a core proceeding).  Likewise, this Court has the authority to hear this matter pursuant to General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984.  The predicates for the relief requested herein are §§ 105 and 350(b) as well as Rule 5010 of the Federal Rules of Bankruptcy Procedure.

2.      The Debtors, individual citizens and residents of Columbus County, North Carolina, filed a joint voluntary petition seeking relief under chapter 11 of the Bankruptcy Code on December 7, 2020 (the "Petition Date"), BK Case No.20-03833-5-JNC (the "Bankruptcy Case").

3.      Prepetition, and in connection with the purchase, acquisition, and financing of an in-ground swimming pool from OCEAN BLUE POOLS & SPAS OF NC (the "Pool Dealer") installed on real property owned by the Debtors and utilized as their personal residence at 64 Connor Road, Delco, North Carolina 28436 (the "Swimming Pool"), the Female Debtor, executed and delivered to MEDALLION BANK a/k/a SYSTEMS & SERVICES TECHNOLOGIES, INC. ("SST), a Simple Interest Note and Security Agreement in the original financed amount of $44,730.00 (the "Amount Financed"), which was payable— together with interest accruing at a rate equal to 9.99% per annum-- in 144 separate monthly installments of $534.30 (the "SST Note").  Repayment of the SST Note, was secured by a security interest in the Swimming Pool, evidenced and perfected by a UCC-1 Financing Statement filed with the Columbus County Register of Deeds on December 12, 2016, in Book 1144, Page 881, File No. 2016005443, of the Columbus County Registry (the "SST Fixture Filing") (the SST Note and the SST Fixture Filing are collectively referred to herein as the

"SST Loan Documents," and with respect to the entire transaction as, the "SST Loan").

4.      SST, likewise, filed a proof of claim in the Bankruptcy Case, Claim No. 19, asserting a secured claim against the Debtors arising from the SST Loan in the amount of $33,460.74 ("SST POC" or "SST Claim").

5.      On October 30, 2021, and during the Bankruptcy Case, the Court entered an Order Confirming First Amended Plan of Reorganization [D.E. 264] (the "Confirmation Order"), which confirmed the First Amended Plan of Reorganization [D.E. 241] filed by the Debtor, as amended and modified (the "Plan") (the Plan and the Confirmation Order are collectively referred to herein as, the "Confirmed Plan").

6.      The Confirmed Plan, which was approved and confirmed by the Confirmation Order, modified the terms and provisions of the SST Loan in Class 24, respectively.

7.      The SST Loan, which was impaired under Class 19 of the Confirmed Plan, was treated as a fully-secured claim and amortized over a period of twelve (12) years (or 144 months) from the Effective Date with interest accruing at a rate equal to five-percent (5.00%) per annum, and payable in monthly installments of $309.48, commencing on October 15, 2021, and continuing monthly thereafter.

8.      Article XIII of the Confirmed Plan, entitled "Effect of Confirmation," provided in relevant part, as follows:

> D.      <u>Injunction.</u>  As of the Confirmation Date, except as otherwise provided in the Plan or the Confirmation Order, all persons that have held, currently hold, or may hold a Claim, Equity Interest, or other debt or liability that is treated pursuant to the terms of the Plan or that is otherwise enjoined pursuant to § 1141 of the Bankruptcy Code, are enjoined from taking any of the following actions against the Debtors on account of any such Claims, Equity Interests, debtor or liabilities, other than actions brought to enforce obligations under the Plan: (i) commencing or continuing in any manner any action or other

3

proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting a setoff or right of recoupment of any kind against any debt, liability, or obligation; and/or (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. Notwithstanding the foregoing, the Plan does not release or waive any Claims the Debtors may have against any party in interest.

   E. <u>Binding Effect.</u> Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Interest in, the Debtors and such holder's respective successors and assigns, whether or not the Claim or interests including any Interest of such holder is impaired under the Plan, whether or not such holder has accepted the Plan and whether or not such holder is entitled to a distribution under the Plan.

   F. <u>Discharge of Claims.</u> Except as provided in the Plan, the rights afforded in and the payments and distributions to be made under the Plan shall discharge all existing debts and Claims of any kind, nature or description whatsoever against or in the Debtors or any of their assets or properties to the fullest extent permitted by §1141 of the Bankruptcy Code.

Order Confirming First Amended Plan of Reorganization [D.E. 264], Ex. 1, at art. XIII(D)-

(F).  Article XV of the Confirmed Plan, governing application of payments thereunder, further

provided as follows:

<u>**ARTICLE XV**</u>
**Application of Plan Payments**

   A. All payments made by the Debtor, under this Plan, shall be applied as indicated in the respective treatment for each Creditor, or if no such application of payments is specified, then payments shall be applied first to accrued interest and then to principal on a monthly basis according to the amortization schedule proposed for each Creditor.  In the event that a creditor is entitled to costs and/or attorneys' fees post-petition under § 506(b) of the Bankruptcy Code, such Creditor must file an application in accordance with the Bankruptcy Code and/or Bankruptcy Rules pertaining to approval of costs and/or attorney fees prior to such costs and/or attorneys' fees becoming part of the Creditor's Allowed Claim or such costs and/or attorneys' fees shall be disallowed as part of such Claim.  Confirmation of the Plan shall impose an affirmative duty and legal obligation on the holders and/or the servicers of any Secured Claims to apply payments in the manner set forth in the Plan in

accordance with § 524(i) of the Bankruptcy Code.

> B.     Confirmation of the Plan shall impose a duty on the Holders and/or servicers of Secured Claims to apply the payments received from the Debtor to the month in which they were made under the Plan or directly by the Debtor, whether such payments are immediately applied to the outstanding balance of the loan or placed into some type of suspense account and to otherwise comply with § 524(i).

Order Confirming First Amended Plan of Reorganization [D.E. 264], Ex. 1, at art. XV(A)-(B).

9.     The Debtors, in accordance with the Confirmed Plan, made all of the requisite payments on the SST Loan and the USB Loan, as modified by the Confirmed Plan.  The Debtors, in fact, paid more towards the SST Loan the USB Loan than they were required under the Confirmed Plan.

10.     Specifically, and pursuant to the Confirmed Plan, the Debtors have remitted the following payments to SST, for application to the SST Loan:

| Date | Check No. | Amount of Payment |
|---|---|---|
| 10/15/2021 | 1879 | $350.00 |
| 11/15/2021 | 1979 | $350.00 |
| 12/13/2021 | 2083 | $350.00 |
| 1/15/2022 | 2217 | $350.00 |
| 2/21/2022 | 2269 | $350.00 |
| 3/24/2022 | 2312 | $350.00 |
| 4/30/2022 | 2357 | $350.00 |
| 5/31/2022 | 2397 | $350.00 |
| 6/30/2022 | 2440 | $350.00 |
| 7/31/2022 | 2509 | $350.00 |
| 8/30/2022 | 2559 | $350.00 |
| 9/30/2022 | 2620 | $350.00 |
| 11/01/2022 | 2668 | $350.00 |
| 11/30/2022 | 2721 | $350.00 |
| 12/30/2022 | 2779 | $350.00 |
| 1/30/2023 | 2842 | $350.00 |

11.     Notwithstanding remittance of the foregoing payments, in amounts in excess of what was required under the SST Loan, as modified by the Confirmed Plan, the Debtors began

receiving telephonic and written communications and correspondence from SST, asserting falsely, inaccurately, deceptively, and in a misleading manner, the following:

    A. As of January 29, 2023, payments on the SST Loan were delinquent and past due in an amount of $7,480.20;

    B. As of March 10, 2023, payments on the SST Loan were delinquent and past due in an amount of not less than $6,945.90;

    C. The monthly installment payment amount, for the SST Loan, was $534.30;

    D. The due date, for monthly installments on the SST Loan, was the twenty-eighth (28th) day of each calendar month;

    E. The sum of $12.00 in late fees were charged to the Debtors;

    F. The current balance of the SST Loan was $32,905.48; and

    G. No portion of the payments that were remitted by the Debtors, since the Effective Date, had been applied to the principal portion/component of the SST Loan.

12.    The written correspondence, remitted by SST and directed to the Debtors included the following language:

---

**THIS NOTICE IS OUR FINAL DEMAND FOR IMMEDIATE PAYMENT OF ALL PAST DUE AMOUNTS.**

Systems & Services Technologies, Inc. ("SST") is the loan servicer of the above-referenced Account. You have not responded to our prior telephone calls and letters. If you fail to make immediate payment or suitable payment arrangements, we may be forced to exercise remedies available to us under the terms of your agreement and applicable laws.

**You must pay this amount now. Call your representative for instructions to wire your payment through Western Union's® Quick Collect® System, or to make alternative payment arrangements at:**

**(877) 695-3153**

This is an attempt to collect a debt. Any information obtained will be used for that purpose.

---

13.    The telephonic and written communications that the Debtors received from SST, each of which were attempts to collect a debt from the Debtors, also demanded payment of amounts that SST was not authorized to collect and the Debtors were not required to pay

14.    The Debtors, themselves and through counsel, have notified SST of the problems, issues, servicing, errors, and violations of the terms of the SST Loan, as modified, the Confirmed Plan, the Confirmation Order, and applicable provisions of the Bankruptcy Code and North Carolina law.

15.    SST, nevertheless, continued to contact the Debtors and pursue collection of the SST Loan after it had been notified that the Debtors were represented by undersigned counsel, who also served as their counsel in the Bankruptcy Case.

16.    Following the closing of the Bankruptcy Case, SST has engaged in a pattern of conduct demonstrating a blatant and willful disregard for the terms of the Confirmed Plan, the Confirmation Order, and applicable provisions of the Bankruptcy Code and North Carolina law.

17.    Notwithstanding the foregoing, and the substantive rights bestowed and protections afforded thereunder, the Debtors have been the victims of the failure by USB and SST to comply with the terms and conditions thereof, which have caused them to incur significant injuries and damages, including reasonable attorneys' fees and expenses.

18.    Section 105(a) of the Bankruptcy Code provides bankruptcy courts with broad discretion to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a); see In re Baldwin-United Corp. Litig., 765 F.3d 343, 348 (2d Cir. 1985) (recognizing that the bankruptcy court's authority under § 105 is broader than the provisions of the automatic stay under § 362).  Section 350(b), in turn,

provides that "[a] case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b); <u>see</u> Fed. R. Bankr. P. 5010 (stating that "[a] case may be reopened on motion of the debtor or other party in interest pursuant to § 350(b) of the Code."). One of the "other causes" recognized for reopening a case under § 350(b) is the need to enforce a discharge injunction. <u>See</u>, <u>e.g.</u>, <u>Redmond v. Fifth Third Bank</u>, 624 F.3d 793, 798 (7th Cir. 2010) ("A bankruptcy court may, for example, reopen a case for the correction of errors, amendments necessitated by unanticipated events that frustrate a plan's implementation, and the need to enforce the plan and discharge." (citing <u>In re Zurn</u>, 290 F.3d 861, 864 (7th Cir. 2002)). To grant a motion to reopen "[t]he moving party must demonstrate that there is a compelling cause. There is no cause if reopening would serve no purpose." <u>Horizon Aviation of Va., Inc. v. Alexander</u>, 296 B.R. 380, 382 (E.D. Va. 2003) (holding that "[t]here is no cause if reopening would serve no purpose.").

19. The determination of whether a movant has demonstrated sufficient cause under § 350(b) is within the broad discretion of the Court and is based "upon the circumstances of the case." <u>Hawkins v. Landmark Finance Co.</u>, 727 F.2d 324, 326-27 (4th Cir. 1984); <u>accord</u> <u>In re Case</u>, 937 F.2d 1014, 1018 (5th Cir. 1991) ("This discretion depends upon the circumstances of the individual case and accords with the equitable nature of all bankruptcy proceedings.").

20. The statutory text of § 350(b) specifically authorizes bankruptcy courts to reopen bankruptcy cases to consider affording relief provided under the Bankruptcy Code, "particularly if that right is grounded in a prior order of the court." <u>In re Venuto</u>, 343 B.R. 120, 125 (Bankr. E.D. Pa. 2006) (citations omitted); <u>see</u> <u>In re Coastline Care, Inc.</u>, 299 B.R. 373, 377 (Bankr. E.D.N.C. 2003) ("It follows that there is no reason to grant a motion to reopen if

substantive relief cannot be granted independently in the reopened case.").  In determining whether reopen a case, bankruptcy courts may consider a number of nonexclusive factors including, *inter alia*, "(1) the length of time that the case has been closed; (2) whether the debtor would be entitled to relief if the case were reopened; and (3) the availability of nonbankruptcy courts, such as state courts, to entertain the claims." Redmond, 624 F.3d at 798 (citing In re Antonious, 373 B.R. 400, 405-06 (Bankr. E.D. Pa. 2007)).  Additional factors generally considered when determining whether to reopen a previously-closed bankruptcy case, include:

> [T]he length of time that the case was closed . . .; whether a non-bankruptcy forum, such as state court, has the ability to determine the issue sought to be posed by the debtor . . .; whether prior litigation in bankruptcy court implicitly determined that the state court would be the appropriate forum to determine the rights, post bankruptcy, of the parties; whether any parties would be prejudiced were the case reopened or not reopened; the extent of the benefit which the debtor seeks to achieve by reopening; and whether it is clear at the outset that the debtor would not be entitled to any relief after the case were reopened.

In re Otto, 311 B.R. 43, 47 (Bankr. E.D. Pa. 2004) (citations omitted); In re Carter, 38 B.R. 636, 638 (Bankr. D. Conn. 1984).

21.    Application of the foregoing factors warrant the reopening of the Bankruptcy Case.  As previously mentioned, following the closure of the Bankruptcy Case, the Debtors have and will continually be the victims of the willful, intentional, knowing and systematic conduct and violations by SST of the Confirmed Plan and the Confirmation Order (both of which are binding upon SST and constitute the directives of this Court),  the Bankruptcy Code, and other applicable federal and North Carolina law, by engaging in a pattern of conduct and undertaking actions, the purpose of which is aimed at collecting the outstanding balances and amounts that Debtors are not legally required to pay and, in addition, failing to properly apply

the payments tendered by the Debtors under the SST Loan, as modified by the Confirmed Plan.

22.     Accordingly, and based upon the foregoing, the Debtors seek entry of an Order reopening the Bankruptcy Case to enforce compliance with the Confirmed Plan, the Confirmation Order, the Orders entered by the Court in the Bankruptcy Case, the provisions of the Bankruptcy Code, as well as other applicable federal and North Carolina law, and remedying all of the systematic and continuous violations thereof.

23.     Because of the egregious nature of the violations at issue and the gravity of the relief and remedies requested, the Debtors request that the reopening fee imposed by 28 U.S.C. § 1930, be waived.  See Bankruptcy Court Miscellaneous Fee Schedule ("The reopening fee *must not be charged* . . . when a debtor files a motion to reopen a case based upon an alleged violation of the terms of a discharge under 11 U.S.C. § 524[.]" (emphasis added)).

24.     Based on the foregoing, the Debtors have demonstrated sufficient cause under § 350(b) to reopen the Bankruptcy Case.

**WHEREFORE,** for the foregoing reasons, the Debtors respectfully requests that the *Motion to Reopen Chapter 11 Bankruptcy Case* be **ALLOWED** and entry of an Order providing the following relief:

1.     Reopening the above-captioned chapter 11 case, Case No. 20-03833-5-JNC, pursuant to § 350(b) and Fed. R. Bankr. P. 5010;

2.     Waiving the reopening fee imposed by the Bankruptcy Court Miscellaneous Fee Schedule and associated with reopening the Bankruptcy Case;

3.     Allowing such other and further relief as the Court may seem just and proper.

Respectfully submitted this, the 14th day of March, 2023.

**BUCKMILLER, BOYETTE & FROST, PLLC**

BY:  ⎯⎯  s/Joseph Z. Frost  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

JOSEPH Z. FROST, NCSB No. 44387
jfrost@bbflawfirm.com

4700 Six Forks Road, Suite 150
Raleigh, North Carolina 27609
T: 919-296-5040
F: 919-977-7101

Counsel for Debtors Timothy Kyle Ellis and Melody Roxann Ellis